IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-522-SMY |
| | ) |
| CHARLES SWISHER, CHAD WALL, | ) |
| CHAD ADAMS, SCOTT PETITJEAN, | ) |
| DONALD WANACK, GARRICK HALE, | ) |
| DANIEL HARRIS, MATTHEW | ) |
| JOHNSON, MICHAEL BAILEY, | ) |
| PATRICK PEEK, BRANDON JUSTICE, | ) |
| ERIC WANGLER, KALE LIVELY, | ) |
| MARK BELL, JUSTIN JURKOWSKI, | ) |
| STEVEN MUMBOWER, SETH | ) |
| MERACLE, DEREK HERMANN, | ) |
| CHARLES HECK, PHILLIP BAKER, | ) |
| WESLEY SHIRLEY, JANA RUETER, | ) |
| JOSEPH DUDEK, MAC-SHANE FRANK, | ) |
| ROBERT O'LEARY, RUSSELL | ) |
| COOLEY, JUSTIN KULICH, JAMES | ) |
| BELFORD, ROBERT TOMSHACK, | ) |
| CHRISTINA FINLEY, ALEXANDER | ) |
| RODMAN, and KEITH BENNETT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court are Defendant Jana Rueter's Motion for Summary Judgment on Exhaustion of Administrative Remedies (Doc. 72) and Defendants Charles Swisher, Chad Wall, Chad Adams, Scott Petitjean, Donald Wanack, Garrick Hale, Daniel Harris, Matthew Johnson, Michael Bailey, Patrick Peek, Brandon Justice, Eric Wangler, Kale Lively, Mark Bell, Justin Jurkowski, Steven Mumbower, Seth Meracle, Derek Hermann, Charles Heck, Phillip Baker, Wesley Shirley, Joseph Dudek, Mac-Shane Frank, Robert O'Leary, Russell Cooley, Justin Kulich,

James Belford, Robert Tomshack, Christina Finley, Alexander Rodman, and Keith Bennett's Motion for Partial Summary Judgment on Exhaustion of Administrative Remedies (Doc. 80). Plaintiff Joshua Hoskins filed a response in opposition (Doc. 88).

Based upon the undisputed material facts contained in the written submissions of the parties, the Court finds that a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) is unnecessary. For the following reasons, Defendant Rueter's motion is **GRANTED**; the remaining Defendants' motion is **GRANTED in part and DENIED in part**.

## Background

Hoskins filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Pinckneyville Correctional Center (Docs. 1, 10). He alleges that 32 prison officials and medical providers at Pinckneyville conspired to deny him access to showers, hygiene items, bedding, underwear, adequate food, and sick call (Doc. 1 at 47) and that these actions were taken in retaliation for him filing grievances and lawsuits against Pinckneyville staff in separate cases. *Id.* Following a threshold review of Hoskins' Complaint pursuant to 28 U.S.C. § 1915A, he was permitted to proceed on the following claims:

**Count 1:** **Eighth Amendment claim for conditions of confinement related to personal hygiene items, showers, and bedding against all Defendants.**

**Count 2:** **Eighth Amendment claim for conditions of confinement related to deprivation of adequate food against Swisher, Hale, Mumbower, Tomshack, Wangler, Adams, Heck, Frank, Rodman, Bennett, Finley, Kulich, Meracle, Johnson, Bailey, Harris, Dudek, Wanack, Justice, Williams, Petitjean, and Wall.**

**Count 4[1]:** **First Amendment retaliation claim against all Defendants**

---

[1] Notwithstanding the explicit instructions in the Court's April 7, 2021 Order ("The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.") (Doc. 10), Defendants redesignate Count 4 as Count 3 in their Memorandum in Support of Motion for Summary Judgment (Doc. 81 at 2 n.1). The Court will continue to refer herein to Hoskin's retaliation claim against all Defendants as Count 4.

Defendants subsequently filed motions for summary judgment, arguing that Hoskins failed to exhaust his administrative remedies prior to filling this lawsuit (Docs. 72, 80). Specifically, Defendant Rueter claims that Hoskins failed to exhaust any grievances that named her as a party. The remaining Defendants argue that Hoskins failed to exhaust (1) any grievances related to Count 4; (2) any claim against Defendants Bailey, Baker, Belford, Bell, Bennet, Cooley, Finley, Heck, Harris, Hermann, Johnson, Jurkowski, Justice, Lively, O'Leary, Peek, Rodman, Shirley, Tomshack, Wanack, and Wangler; and (3) any claims regarding Counts 1 and 2 prior to September 3, 2019.

In his response in opposition to the motions for summary judgment (Doc. 88), Hoskins argues the grievance process at Pinckneyville was unavailable to him because he had trouble receiving responses and receipts for certain grievances. He claims that as a result, he forwarded some grievances directly to the Administrative Review Board (ARB) and requested ARB staff forward the grievances to the Pinckneyville warden so the facility would address his grievances and provide him with a response. He asserts that the ARB was on notice of his issues because he forwarded them his grievances. Hoskins submitted numerous documents with his response and later filed supplements to his opposition, asking the Court to review decisions from Magistrate Judge Reona Daly in case number 20-cv-302, District Judge Stephen McGlynn in case number 20-cv-533, and Magistrate Judge Mark Beatty in case number 20-cv-395 (Docs. 94, 97, 98).[2]

## Undisputed Facts

The following facts are undisputed: On June 3, 2020, Plaintiff Joshua Hoskins, an inmate of the Illinois Department of corrections (IDOC) who is currently incarcerated at Dixon Correctional Center, commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983

---

[2] In each of these cases, the Defendants' motions for summary judgment regarding exhaustion of administrative remedies were denied.

(Doc. 1). He alleges that between June 5, 2019 and April 30, 2020, while he was incarcerated at Pinckneyville, all Defendants denied him access to showers, hygiene items, bedding, underwear, and sick call. *Id.* at 47. He further alleges that from June 5, 2019 to September 25, 2019 and between January 6, 2020 and February 6, 2020, Defendants Swisher, Hale, Membower, Tomshack, Wangler, Adams, Heck, Frank, Rodman, Bennett, Finley, Kulich, Meracle, Johnson, Bailey, Harriss, Dudek, Wanack, Justice, Williams, Petitjean, and Wall denied him adequate food, and that these actions were done in retaliation for him filing grievances and lawsuits against Defendants. *Id.*

During the relevant periods, Hoskins filed 77 grievances (Doc. 73-4 at 1-2). Many of these grievances were submitted directly to the ARB asking staff members to forward his grievances to the Pinckneyville warden. The 8 grievances naming or describing Defendant Rueter were submitted directly to the ARB (Doc. 73 at 3). Hoskins directly filed 19 grievances with the facility (Doc. 73 at 3-4). Of those 19 grievances, Defendants concede that Hoskins appropriately processed the following 6: (Doc. 81 at 3).[3]

1. **July 30, 2019, grievance 2398-07-19** (Doc. 73-3 at 90-93): In this grievance, Plaintiff alleges Defendants Adams, Dudek, Meracle, Swisher, and Wall all conspired to fabricate the laundry lists to make it appear that his laundry was being processed and refused to provide Plaintiff with showers. He claims staff give "retaliatory reasons" for why they keep him housed in a cell that was previously set on fire. On July 8, 2019, Adams threatened him to refuse psychotropic medication or mental health treatment. He also claims to suffer from dental issues because staff are refusing to provide a toothbrush or toothpaste.

The Grievance Officer's Report indicated the following: Lt. Wall denied the allegations of falsifying documents. All inmates are provided a toothbrush and toothpaste on arrival. He is not indigent, so he needs to buy hygiene supplies if he wants them. The issue of staff telling him to deny medications and mental health has been addressed repeatedly. All staff deny telling this offender to refuse medication. Also, he sees mental health regularly. There is no merit to the offender's claim. Grievance should be considered no merit. The warden concurred and the ARB affirmed.

---

[3] These grievances only related to allegations against Defendants Adams, Dudek, Frank, Hale, Kulich, Meracle, Mumbower, Petitjean, Swisher, and Wall.

      **2.** **August 19, 2019, grievance 2635-08-19** (Doc. 73-1 at 143-46): Plaintiff filed this grievance as an emergency, which was denied, and he resubmitted this grievance on August 27, 2019. He claims that staff are denying him toothbrushes, toothpaste, and other hygiene products. He claims that Lt. Wall came to his cell and told him that Lt. Frank was part of their conspiracy against the Plaintiff. He claims the staff are taking these actions out of retaliation for prior complaints. The Grievance Officer's Report indicates that the prison dentist had seen Hoskins multiple times since his arrival. He had never complained of dental issues and there was no evidence of problems with his mouth. All other issues were addressed in other grievances, so it was recommended that the grievance be denied. The warden concurred and the ARB affirmed, noting that Hoskins never named who was denying him a toothbrush and toothpaste.

      **3.** **September 3, 2019, grievance 2781-09-19** (Doc. 73-3 at 8-11): In this grievance, Plaintiff claims he cannot afford hygiene items and that staff—Hale, Swisher, Vandekerove, Grove, Dudek, Wall, Meracle, Smith, Petijean, Frank, Mumbower, Mayer, Adams, Kulich, and Love[4]—refused to give him hygiene items during showers while he was housed in segregation. These staff members threatened that he would never receive hygiene items for "retaliatory reasons." *Id.* at 11. Officer Kulich alleged threatened Hoskins because "all you do is complain." *Id.* The Grievance Officer's Report indicates that the staff misconduct allegations and indigent supply issues are repeat issues that have been addressed in previous grievances. The grievance officer opined that Hoskins failed to follow proper procedures to address the issues he is grieving; thus, this grievance should be denied. The warden concurred and the ARB affirmed.

      **4.** **September 3, 2019, grievance 2783-09-19** (Doc. 73-3 at 12-15): In this grievance, Plaintiff claims staff—Swisher, Hale, Vandekerove, Grove, Dudek, Meracle, Petitjean, Smith, Mumbower, Mayer, Frank, and Adams—deny him cleaning supplies so that he cannot clean his cell. He alleges that staff are falsifying logs regarding cleaning supplies. His dirty cell has affected his sleep, concentration, and caused nausea, vomiting, and skin irritation. He claims staff are retaliating against him and that Assistant Warden Love told Hoskins he would always side with his staff members. The Grievance Officer's Report notes that cleaning supplies and cell conditions have been addressed in grievances 1916-06-19, 1927-06-19, 2035-07-19, and 2782-09-19. The issue of falsified logs was addressed in grievance 2793-09-19. The grievance officer recommended the grievance be denied. The warden concurred and the ARB affirmed.

      **5.** **September 3, 2019, grievance 2793-09-19** (Doc. 73-3 at 21-24): In this grievance, Plaintiff claims Lt. Frank admitted knowing the shower, laundry, and yard logs were altered. He claims that C/O Swisher ensures that he does not receive his psych meds. He also alleges that Major Adams demanded that Hoskins refuse all meds and mental health evaluations, and that he instructed his R5 staff to deny Hoskins showers, yard, and hygiene items. On July 8, 2019, Adams told Hoskins that he would ensure he was denied medical treatment and other necessities because

---

[4] Vandekerove, Grove, Smith, Mayer, and Love are not parties to this lawsuit.

he filed a civil rights complaint against Swisher and for other retaliatory reasons. *Id.* at 24. On August 1, 2019, C/O Kulich threatened Hoskins and ensured that he would continue receiving only two slices of bread because of the civil rights action against C/O Swisher. *Id.* The Grievance Officer's Report indicates that their office only received one page of this grievance, but Hoskins claims the grievance is three pages long. Lt. Frank and Major Adams deny all allegations. All security staff stand by the accuracy of the logs maintained in R5. The grievance officer found that none of the claims could be substantiated and this grievance should be deemed "no merit." The warden concurred and the ARB affirmed.

      **6.**      **September 3, 2019, grievance 2794-09-19** (Doc. 73-1 at 109-13, 120-29): In this grievance, Plaintiff claims on August 17, 2019, Lt. Wall and C/O Swisher denied Hoskins commissary items and that they are forcing him to refuse his mental health evaluations and psychotropic medications. He claims that they have threatened to beat him if he ever identified his psychological issues to mental health staff. He apparently suffers from manic depression, hallucinations, hearing voices, and wanting to harm himself. He alleges that Lt. Frank, Lt. Petitjean, and Assistant Warden Love threatened him. He claims that C/O Hale knew his cell was previously set on fire but was keeping him in that cell because of his lawsuit against Swisher. Since that date, staff have denied Hoskins showers, yard, hygiene items, and medical treatment.

      The grievance officer received this grievance on September 3, 2019. On October 2, 2019, the ARB received this grievance and remanded it back to Pinckneyville for further review. *Id.* at 125. The grievance officer reviewed it on February 18, 2020. The Grievance Officer's Report indicates that C/O Swisher is not in the facility at the time Hoskins takes medication. Further, C/O Swisher is assigned to D wing, while Hoskins is housed in the C wing. Swisher, Wall, Vandekerove, and Hale deny all allegations. According to the R5 daily activity logs, Hoskins would refuse yard time and refuse shower/soap. The grievance officer recommended the grievance be denied. The warden concurred and the ARB affirmed. The ARB received the response to the offender's grievance on February 24, 2020 and determined that the grievance should be denied. *Id.* at 120. The ARB stated that "this office is unable to address allegations for dates prior to 7/3/19 due to them being past time frame. The allegations of staff misconduct could not be substantiated." *Id.* at 109.

## Discussion

      Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Under the Prison Litigation Reform Act, a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 742. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey*, 663 F.3d at 903. To properly exhaust administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, at 1025. Strict adherence to the exhaustion requirement is required. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

As an IDOC inmate, Hoskins was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). Under that process, an inmate must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer (CAO)—usually the Warden—within two months of receipt, "when reasonably feasible under the circumstances." *Id.* at § 504.830(c). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board (ARB) for a final decision. *Id.* at § 504.850(a); *see also Dole*, 438

F.3d at 806-07. The ARB will submit a written report of its findings and recommendations to the Director of the Illinois Department of Corrections who shall review the same and make a final determination within six months of the receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d)-(e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. *Id.* at § 504.840. If it is determined that there a substantial risk of imminent personal injury or other serious or irreparable harm exists, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may also submit *certain types* of grievances directly to the ARB, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

Here, Hoskins was clearly aware of and understood the grievance procedures at Pinckneyville. He was provided an orientation manual explaining the grievance process upon his arrival (Doc. 73-6 at 14; Doc. 73-7 at 16-17) and has successfully and correctly used the grievance procedures in unrelated matters (Doc. 88 at 7, 9). He understood the grievance process when he filed his grievances with the prison and when he filed his Complaint in this case. Despite this knowledge, Hoskins repeatedly failed to the follow the grievance process when he submitted grievances directly to the ARB. On September 26, 2019 and October 28, 20219, the ARB explicitly instructed him to follow the grievance process at the facility level, requesting that he submit the original grievance including the counselor's, grievance officer's, and CAO's responses, if timely, to the ARB (Doc. 73-2 at 135; Doc. 73-3 at 55): "…you need to submit the original grievance to the grievance box. You have submitted several original grievances to this office that need to be addressed at the facility level first." Nevertheless, Hoskins persisted by improperly

filing 22 grievances directly to the ARB from November 2019 to March 8, 2020 (Doc. 73 at 2-3). Those grievances cannot serve to exhaust his administrative remedies.

Hoskins asserts that he filed grievances directly with the ARB because the grievance process was unavailable to him at Pinckneyville. He offers several explanations for why he was forced to submit grievances directly to the ARB, including that prison officials were destroying his grievances and counselors refused to respond to his grievances (Doc. 88 at 10-11). He also claims that some counselors conspired with Defendants to destroy grievances and/or refuse to process his grievances. *Id.* at 13.[5]

Beyond Hoskin's speculation, the record lacks evidence corroborating his explanations. Rather, in some instances, he filed grievances relevant to the issues of this case, but failed to submit them to the next level of appeal or failed to comply with Department Rule 504 (Doc. 73-4 at 1-2; Doc. 88 at 43-54). While Hoskins submitted some grievances to the ARB, he simultaneously filed grievances with Pinckneyville counselors and received responses. Thus, the grievance system remained available to Hoskins – he simply failed/refused to properly follow the process.

Simply put, the record is replete with instances where Hoskins was able to use the grievance process – it was available to him. As such, the Court does not find his assertions regarding the alleged destruction of his grievances or his inability to file grievances to be credible. Accordingly, the Court will review the 6 grievances that were undisputedly properly processed to determine whether they exhaust Hoskins' administrative remedies relative to the claims asserted in this case.

---

[5] Hoskins has made similar arguments in other cases to varying degrees of success. *See Hoskins v. Johnson, et al.*, Case No. 19-cv-1303-GCS (Doc. 98 at 15-17) (S.D. Ill. Dec. 10, 2020) (finding Hoskins' testimony regarding destroyed grievances incredible); *Hoskins v. Swisher, et al.*, Case No. 20-cv-302-RJD; *Hoskins v. Adams, et al.*, Case No. 20-cv-533-SPM.

**Defendant Rueter**

The grievance procedures require that an inmate name the individuals involved, or, if their names are unknown, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). In other words, an inmate is must provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Hoskins failed to name or adequately describe Defendant Rueter in any of the grievances in question. He admits that he did not encounter Rueter until October 2019, and therefore, she is not named in grievances filed before that time (Doc. 88 at 2). As previously noted, grievances which may have named or described Rueter that Hoskins sent directly to the ARB were not properly exhausted before filing this lawsuit. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Therefore, Defendant Rueter is entitled to summary judgment.

**Defendants Bailey, Baker, Belford, Bell, Bennett, Cooley, Finley, Heck, Harris, Hermann, Johnson, Jurkowski, Justice, Lively, O'Leary, Peek, Rodman, Shirley, Tomshack, Wanack, and Wangler**

Hoskins failed to name these Defendants in any of the properly processed grievances. While he complained that other staff members were involved in the conspiracy to deny him hygiene items, showers, linens, and cleaning supplies, he did not identify any defendants beyond generally claiming every staff member that worked in segregation was involved. "Staff" is too ambiguous a description to provide sufficient notice for prison officials to address the issue or to implicate the defendants herein in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."). Thus, Hoskins failed to exhaust his administrative remedies as to Defendants Bailey, Baker, Belford, Bell, Bennett, Cooley, Finley, Heck, Harris,

Hermann, Johnson, Jurkowski, Justice, Lively, O'Leary, Peek, Rodman, Shirley, Tomshack, Wanack, and Wangler, and they are entitled to summary judgment.

**Adams, Dudek, Frank, Hale, Kulich, Meracle, Mumbower, Petitjean, Swisher, and Wall**

*Count 1: Hygiene Items, Showers, and Bedding*

Hoskins alleges that Defendants denied him access to showers, hygiene items, bedding, underwear, and sick call between June 5, 2019, and April 30, 2020 (Doc. 1 at 47).  The above-named defendants concede that Hoskins exhausted his claims on or before September 3, 2019, for actions related to Count 1 (Doc. 81 at 6-8).  Therefore, Defendants' motion regarding Count 1 is **DENIED**.

*Count 2: Food*

Hoskins alleges that from June 5, 2019 to September 25, 2019 and between January 6, 2020 and February 6, 2020, Defendants Swisher, Hale, Membower, Tomshack, Wangler, Adams, Heck, Frank, Rodman, Bennett, Finley, Kulich, Meracle, Johnson, Bailey, Harriss, Dudek, Wanack, Justice, Williams, Petitjean, and Wall denied him adequate food in retaliation for him filing grievances and lawsuits against Defendants (Doc. 1 at 47).  Only one of the 6 grievances mentions an alleged deprivation of adequate food: grievance 2793-09-19 (Doc. 73-3 at 21-24).  In that grievance, Hoskins claims that on August 1, 2019, C/O Kulich threatened him and assured that he would continue receiving only two slices of bread because of the civil rights action against C/O Swisher.  *Id.* at 24.  Although the counselor and grievance officer failed to address this complaint in their responses to Hoskins, the prison was sufficiently placed on notice of this issue.  Therefore, Count 2 will proceed against Defendant Kulich, but will be dismissed with respect to Defendants Adams, Dudek, Frank, Hale, Meracle, Mumbower, Petitjean, Swisher, and Wall.

*Count 4: Retaliation*

Hoskins claims that the Defendants denied him access to hygiene items, showers, bedding, and adequate food in retaliation for filing a lawsuit against C/O Swisher, filing grievances against Pinckneyville staff, and "for other retaliatory reasons" (Doc. 1 at 47). Defendants argue that Hoskins failed to exhaust any grievances related to retaliation (Doc. 81 at 3, 6). They assert that Hoskins never claimed that Defendants took the actions alleged in this lawsuit in retaliation, but rather, stated, "other actions that they took were done for 'retaliatory reasons.'" *Id.* at 7. The Court disagrees.

In several of the grievances in question, Hoskin complains that Defendants told him they were denying him items because of his many complaints. In grievance 2635-08-19, he claims that Defendants Swisher, Dudek, Wall, Mumbower, Petitjean, Meracle, Frank, Adam, and Kulich denied him hygiene products out of retaliation for prior complaints he sent to internal affairs (Doc. 73-1 at 146). He also wrote that the named staff "give retaliatory reasons of why they were denying me the human necessities mentioned in this grievance in favor of C/O Swisher." *Id.* In grievance 2781-09-19, Hoskins claims Officer Kulich threatened him because "all you do is complain" (Doc. 73-3 at 11). And in grievance 2793-09-19, Hoskins claims that on July 8, 2019, Adams told him that he would ensure he was denied medical treatment and other necessities because he filed a civil rights complaint against Swisher and for other retaliatory reasons. *Id.* at 24. Based on this record, Hoskins has exhausted his administrative remedies with respect to his retaliation claim; Defendants are not entitled to summary judgment on Count 4.

## Conclusion

For the foregoing reasons, Defendant Jana Rueter's Motion for Summary Judgment on Exhaustion of Administrative Remedies (Doc. 72) is **GRANTED**; Plaintiff's claims against

Defendant Rueter are **DISMISSED without prejudice**. The remaining Defendants' Motion for Summary Judgment on Exhaustion of Administrative Remedies (Doc. 80) is **GRANTED in part** and **DENIED in part**.

Plaintiff's claims against Defendants Bailey, Baker, Belford, Bell, Bennett, Cooley, Finley, Heck, Harris, Hermann, Johnson, Jurkowski, Justice, Lively, O'Leary, Peek, Rodman, Shirley, Tomshack, Wanack, and Wangler are **DISMISSED without prejudice**. Plaintiff's claims regarding Count 2 against Defendants Adams, Dudek, Frank, Hale, Meracle, Mumbower, Petitjean, Swisher, and Wall are **DISMISSED without prejudice**. Plaintiff's claim regarding Count 2 against Defendant Kulich remains. Plaintiff's claims regarding Counts 1 and 4 against Defendants Adams, Dudek, Frank, Hale, Kulich, Meracle, Mumbower, Petitjean, Swisher, and Wall remain.

Plaintiff's pending motions (Docs. 95 and 97) are **TERMINATED as moot**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of this case.

**IT IS SO ORDERED.**

**DATED:** January 26, 2022

2022.01.26
11:05:47 -06'00'

**STACI M. YANDLE**
**United States District Judge**