IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA HOSKINS #R54570, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-522-SMY |
| | ) |
| CHARLES SWISHER, et al, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants Chad Adams, Joseph Dudek, Mac-Shane Frank, Garrick Hale, Justin Kulich, Seth Meracle, Steven Mumbower, Scott Petitjean, Charles Swisher, and Chad Wall (Doc. 155), which Plaintiff Joshua Hoskins opposes (Docs. 164). For the following reasons, the motion is **GRANTED in part**.

## Factual Background

The following material facts are undisputed unless otherwise noted: During the relevant period between June 2019 and April 2020, Defendants were staff members of Pinckneyville Correctional Center and Hoskins was an inmate at the facility. On the first day that Hoskins arrived at Pinckneyville, Defendant Dudek informed him that he was not going to possess hygiene necessities and was instead to be treated like a dog (Doc. 155-1 at 21:1-8). This was supposedly in retaliation for a previous lawsuit against Defendant Swisher (Doc. 155-1 at 22:12-19; 92:4-9). Defendant Swisher notified Hoskins that he was going to be put in cells with poor conditions as well (Doc. 155-1 at 22:12-19). At various times, Defendants Frank, Hale, Kulich, Meracle, Mumbower, Petitjean, and Wall reiterated that Hoskins was going to be treated poorly because of his previous litigation and grievances (Doc. 155-1 at 28:3-23; 91:5-11; 95:2-7).

While imprisoned, Hoskins was denied "sheets, blankets, a jumpsuit – clean jumpsuits while being in [segregation], underwear, socks, boxers, hygiene, cosmetics" (Doc. 155-1 at 51:4-10). The cell house lieutenants and officers were responsible for providing these necessities to inmates (Doc. 155-1 at 52:1-7). Hoskins "always" requested bedding, sheets, a pillow, and a blanket but only the staff had "access to those necessities" (Doc. 155-1 at 54:19-24). For instance, Hoskins requested a sheet, blanket, and pillow from Defendants Mumbower, Wall, and Meracle, but never obtained one (Doc. 155-1 at 58:14-23). Hoskins was given one jumpsuit that he was not allowed to wash from June 2019 to September 2019 (Doc. 155-1 at 61:2-5). Defendants Wall, Kulich, and Meracle told Hoskins that he was not allowed to send his laundry out for cleaning (Doc. 155-1 at 65:5-8).

Defendant Frank watched the cameras and notified Hoskins that he should not be taking showers, possessing hygiene necessities, or going to the laundry room (Doc. 155-1 at 62:19-25). Based on these threats, Hoskins did not take a shower (Doc. 155-1 at 98:5-10).

On or about August 2, 2019, Hoskins submitted a grievance stating: "Grievant claims the following: Grievant claims Lt. Wall and the R5 staff fabricate the laundry logs to say that he sent laundry out or refused. Grievant claims he is denied laundry services. Grievant claims Lt. Wall told Lt. Meracle to have staff record that he refuses showers. Grievant claims he is denied showers. Grievant claims he was placed in a cell that had been set on fire, making it hard to breathe or sleep" (Doc. 164, p. 69).

Hoskins' Inmate Transaction Statement from January 1, 2019 to January 13, 2021 shows numerous commissary purchases (Doc. 155-3). Hoskins' Sales History Report indicates that these purchases were bars of soap and moisturizing bars, liquid detergent, toothpaste and toothbrushes, and lotions (Doc. 155-4).

On November 27, 2019, Hoskins received a disciplinary report for "contraband/unauthorized property" for possessing "excess property." The report notes, "Reporting Offer Pursell observed Inmate Hoskins R54570 to be in possession of five soap dishes, twenty-six bars of Dial Soap, ten toothbrushes, twenty-three bars of Tone Soap, eighteen bars of Irish Spring, six AMBI, fourteen dial, thirty Level-10 four Ivory and one hundred and forty-four Bars of State Soap" (Doc. 155-5). Hoskins was found guilty of the infraction.

During his deposition, Hoskins testified that Defendant Kulich would not allow him to receive hygiene necessities (Doc. 155-1 at 71:4-8) and that the items listed in the disciplinary report were actually confiscated (Doc. 155-1 at 74:15-21). A few inmates donated their items because of Hoskins' deprivation but prison staff "shook [his] cell down" and removed these items (Doc. 155-1 at 76:14-24).

Because Hoskins had dietary restrictions, a special tray was prepared with his name on it (Doc. 155-1 at 32:22-24). While Hoskins was in segregation, the officer would pass the meal to him through a "chuckhole" in the cell door (Doc. 155-1 at 31:11-14).

Defendant Kulich worked the dinner shift and handed the food trays to Hoskins (Doc. 155-1 at 34:24-35:4). Defendant Kulich informed Hoskins that he would only obtain bread in his meals, starting in June 2019 (Doc. 155-1 at 30:9-14). Defendant Kulich also instructed other correctional staff to only give two slices of bread per meal to Hoskins (Doc. 155-1 at 40:6-24). During the time that Hoskins was in segregation, he never received a full meal. From June to September 2019, he only received six pieces of bread a day, everyday (Doc. 155-1 at 33:5-17). Hoskins also received empty milk cartons that he could fill from water in his cell (Doc. 155-1 at 34:1-14). Hoskins lost weight, with his clothes no longer fitting and his jaw "sucking in where [people] can see the bones in [his] face" (Doc. 155-1 at 45:7-20).

### Hoskins I

Hoskins filed a previous lawsuit regarding his incarceration at Pinckneyville from June 15, 2019 to March 31, 2020 in *Hoskins v. Charles Swisher, et al.,* 20-cv-302-RJD (S.D. Ill. Mar. 23, 2020). In that lawsuit, he alleged that during this incarceration, he was denied religious items and attendance at religious services, and that these actions were taken in retaliation for him filing grievances and a lawsuit against Pinckneyville staff.

Hoskins proceeded on 3 counts for First Amendment retaliation against staff members for "denying access to religious services and religious materials for filing grievances and lawsuit," "substantially burdening Plaintiff's exercise of religion," and "placing him in segregation for filing grievances and lawsuits." *Hoskins v. Charles Swisher, et al.*, 20-cv-302-RJD (Doc. 235, pp. 1-2) (S.D. Ill. Mar. 22, 2023). Following dismissal of some defendants in an order granting partial summary judgment, the 3 counts remain (*Id.*, p. 17). On April 3, 2023, Hoskins filed a Motion to Alter Judgment that remains pending. *Hoskins v. Charles Swisher, et al.*, 20-cv-302-RJD (Doc. 237) (S.D. Ill. Apr. 3, 2023).

### Discussion

Hoskins filed the instant lawsuit pursuant to 42 U.S.C. § 1983 (Doc. 1). Following the initial screening and motions for summary judgment on the exhaustion of administrative remedies (Docs. 72, 80), Hoskins is proceeding on the following claims:

| | |
|---|---|
| Count 1: | Eighth Amendment claim for conditions of confinement related to personal hygiene items, showers and bedding against all Defendants (Adams, Dudek, Frank, Hale, Kulich, Meracle, Mumbower, Petitjean, Swisher, and Wall); |
| Count 2: | Eighth Amendment claim for conditions of confinement related to Defendant Kulich for providing him with inadequate food (two slices of bread per meal instead of his special diet); |
| Count 4: | First Amendment retaliation claim against all Defendants (Adams, Dudek, Frank, Hale, Kulich, Meracle, Mumbower, Petitjean, Swisher, and Wall). |

(Doc. 10, p. 3; Doc. 101, pp. 11-13).

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

### Count 1: Conditions of Confinement (Personal Hygiene Items)

Hoskins alleges that that between June 5, 2019 and April 30, 2020, the defendants denied him access to showers, hygiene items, bedding, underwear, and sick call. To succeed on an Eighth Amendment claim related to conditions of confinement, a plaintiff must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety, and that a defendant had a culpable state of mind – that is that a defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

The denial of personal hygiene items may violate the Eighth Amendment. *Budd v. Motley,* 711 F.3d 840, 842 (7th Cir. 2013) (denial of access to "adequate sanitation and personal hygiene items" may demonstrate a deprivation of "the minimal civilized measure of life's necessities"). Moreover, some "conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so," which is particularly true when the "deprivations have a mutually enforcing effect which produces the deprivation of a single,

identifiable human need." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

Here, Hoskins testified that the defendants denied him "sheets, bedding, blankets, clean jumpsuits, showers, and all hygiene items" between June of 2019 and April of 2020 (Doc. 155-1 at 51:16-20). While the deprivation of one of the aforementioned may not rise to a constitutional level, the denial of these items in combination would deprive an individual the basic human need of cleanliness. And although Defendants produced a disciplinary infraction reflecting that Hoskins had over one hundred bars of soap in his possession in November 2019 and not dispositive of the other months that Hoskins alleged he was deprived of essential hygienic items (Doc. 155-5), Hoskins' testimony creates material issues of fact as to some, but not all of the named defendants. Specifically, the evidence in the record is sufficient to support liability against Frank for monitoring the cameras and not allowing Hoskins to take showers and obtain hygienic items; Mumbower, Wall, and Meracle for not providing Hoskins with a sheet, blanket, and pillow; and Wall, Kulich, and Meracle for not allowing Hoskins to send his laundry out for cleaning. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (individual cannot be held liable unless he caused or participated in an alleged constitutional deprivation).

Accordingly, summary judgment on Count 1 will be granted with respect to Defendants Adams, Dudek, Swisher, Hale, and Petitjean, and denied with respect to Defendants Frank, Mumbower, Wall, Kulich, and Meracle.

### Count 2: Conditions of Confinement (Food)

The Eighth Amendment requires prisons to provide a "well-balanced meal, containing sufficient nutritional value to preserve health." *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)). The Eighth Amendment may be violated if a prisoner receives inadequate nutrition. *Antonelli v. Sheahan*, 81 F.3d 1422,

1432 (7th Cir. 1996); *see also, Hutto v. Finney*, 437 U.S. 678, 682 (1978) (diet consisting of fewer than 1,000 calories each day could violate the Eighth Amendment if maintained for substantial time period).

Hoskins testified that he only received two slices of bread per meal and lost a significant amount of weight while he was in segregation from June 5, 2019 to September 25, 2019.[1] This is a plainly nutritionally insufficient. *Hutto*, 437 U.S. at 683 n. 7 (noting that even a prisoner in punitive isolation requires 2,000 calories a day). Hoskins also testified that Defendant Kulich told him he was only going to receive two slices of bread and that other correctional staff told him that "Defendant Kulich told them to make sure [Hoskins] only got two slices of bread" (Doc. 155-1 at 40:11-16). On these facts, a jury could reasonably find Defendant Kulich was deliberately indifferent to Hoskins' welfare by repeatedly giving him only two slices of bread for meals while he worked the dinner shift and distributed food to inmates in segregation. Thus, summary judgment will be denied on Count 2.[2]

**Count 4: First Amendment Retaliation Claim**

Hoskins alleges that the defendants retaliated against him for his previous lawsuits and grievances by treating him poorly in prison. As an initial matter, Defendants argue that Hoskins' claim is barred by the principles of res judicata and collateral estoppel vis-à-vis *Hoskins I*. Hoskins

---

[1] According to the United States Department of Agriculture's national nutrient database, one medium or regular slice (28 grams) of bread has about 75 calories, which would mean that Hoskins received about 150 calories per meal, or perhaps about 500 calories per day. United States Department of Agriculture, Agricultural Research Service, https://fdc.nal.usda.gov/fdc-app.html#/food-details/2343073/nutrients (last visited May 10, 2023).

[2] Qualified immunity attaches to a government official's conduct unless: (1) they violated a federal statutory or constitutional right; and (2) the unlawfulness of this conduct "was clearly established at the time." *McGee v. Parsano*, 55 F.4th 563, 570 (7th Cir. 2022). The law was clearly established during the relevant time that officials act with deliberate indifference when they react with a lack of concern to an inmate's complaints about lacking essentials, particularly adequate hygiene and food. *Lunsford*, 17 F.3d at 1580. *See also, Budd v. Motley,* 711 F.3d 840, 842 (7th Cir. 2013). Therefore, the defendants are not entitled to qualified immunity with respect to the claims asserted in Counts 1 and 2.

asserts that *Hoskins I* is about religious observation and this lawsuit involves different claims and facts involving general treatment in the prison.

Res judicata precludes a claim where "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of the cause of action, and (3) there is an identity of the parties or their privies." *Hicks v. Midwest Transit, Inc.,* 479 F.3d 468, 471 (7th Cir. 2007). Collateral estoppel (otherwise known as issue preclusion) applies if (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th Cir. 1995).

Neither Res judicata nor collateral estoppel apply to bar Plaintiff's claim in Count 4 because the claims in *Hoskins I* involve the prison officials restricting Hoskins' religious observance, not the conditions of his confinement with hygienic and food items. While this Court agrees that Hoskins may have been able to bring all of these claims together as one lawsuit, or that a motion to consolidate could have been appropriate at one point, the issues in the instant case were not litigated in *Hoskins I*.

Turning to the merits of the retaliation claim, "To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). At the summary judgment stage, a plaintiff has the burden of producing evidence that his First Amendment protected activity was at least a motivating factor to a defendant's retaliatory action.

The burden then shifts to the defendant to rebut any causal inference raised by Plaintiff's evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

Hoskins testified that all of the defendants "gave [their] conduct" or told him that due to his previous lawsuits and grievances, he was going to be treated poorly. Whether Hoskins' testimony is credible remains an issue of fact for a jury. Defendants have not produced sufficient evidence to rebut this "causal inference" as a matter of law. *Kidwell*, 679 F.3d at 965. Therefore, summary judgment will be denied with respect to Count 4.[3]

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 155) is **GRANTED** on Count 1 with respect to Defendants Adams, Dudek, Swisher, Hale, and Petitjean. The motion is **DENIED** with respect to the remaining defendants on Counts 1, 2, and 4. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of this case.

This case will be set for a status conference to select a firm trial date by separate order.

**IT IS SO ORDERED.**

**DATED:  May 17, 2023**

**STACI M. YANDLE**
**United States District Judge**

---

[3] Defendants assert that because Hoskins did not suffer physical injury, he is not entitled to compensatory damages under the Prison Litigation Reform Act. Damages are an issue for trial and are not dispositive of Hoskins' claims.